STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-10-325
TDW-CuM. 7/19/2011

PETER CURTIS,

    Plaintiff,

v.

ORDER

WILLIAM B. HAHN, Trustee of
the William B. Hahn Revocable Trust

    Defendant.

**STATE OF MAINE**
Cumberland, ss, Clerk's Office

JUL 19 2011

# RECEIVED

A jury waived trial in the above captioned action was held on July 18, 2011.

Plaintiff Peter Curtis is seeking a declaratory judgment that he has a deeded right of way across land owned by the William B. Hahn Revocable Trust. The Hahn Trust has counterclaimed for trespass.

1. <u>Right of Way Claim</u>

The parties own land on Abner's Point, a promontory which forms the west shore of Mackerel Cove on Bailey Island. To understand the dispute in this case, it is helpful to look at a map. Attached to this order is a copy of the pertinent portion of a January 1950 plan made for James Gardner which was admitted in evidence as Plaintiff's Ex. 2 and Defendant's Ex. 25. The colored markings on that map have been added by the court.

Curtis now owns the two parcels shown on the attached map as belonging to Winifred W. Curtis. The Hahn Trust owns the parcels to the southwest of the Curtis parcels shown on the attached map as belonging to Katherine Burnet and Katherine B.

Hahn. The dispute involves the area shown on the attached map as a right of way along the southeast border of the Katherine Burnet parcel and is shaded in yellow on the attached map.

Curtis's claim that he has a deeded right of way essentially depends on two deeds. The first is a 1927 deed from Waitstill Bibber and Lucy Doughty to James Gardner conveying the parcel subsequently shown on the attached map as belonging to Katherine B. Hahn and encompassing the smaller parcel subsequently shown on the attached map as belonging to Winifred W. Curtis. Plaintiff's Ex. 10. The last sentence of that deed reads as follows:

> I reserve a right of way along the northwesterly side of this lot, This right of way for Dr. Burnet and others.

Dr. Burnet was Katherine Burnet (Hahn's grandmother). At that time she not only owned the parcel shown as belonging to Katherine Burnet on the attached map but also owned a larger parcel of land to the southwest.

As the attached map demonstrates, a right of way along the northwesterly side of the lot conveyed to Gardner in 1927 corresponds to the right of way shaded in yellow on the attached map. However, neither Dr. Burnet nor any of the unspecified "others" were parties to the deed from Bibber and Doughty to Gardner. Under Maine law, a reservation to a stranger, meaning an individual who is not a party to the transaction, cannot of its own force pass rights to the stranger. Midcoast Cohousing land Acquisition LLC v. Riverhouse Trust, 2008 ME 70 ¶ 8, 946 A.2d 421, 423; Fitanides v. Holman, 310 A.2d 65, 67 (Me. 1973). As a result, the 1927 deed did not create the right of way now claimed by Curtis.[1]

---

[1] If such a right of way had previously been granted to Dr. Burnet, then the reservation of that right of way in the 1927 deed would merely have confirmed that the property conveyed to

2

The second deed relied on by Curtis is a 1949 deed from James Gardner to Winifred W. Curtis (Plaintiff's Ex. 1) conveying to Curtis the smaller of the two parcels shown as belonging to Curtis on the attached map (outlined in blue). The 1949 deed was recorded on February 6, 1950. Although the deed was executed before the date of the 1950 Gardner Plan (Plaintiff's Ex. 2) and contains no reference to that plan, the deed does reference some of the features shown on that plan, specifically the rights of way shown on that plan.[2]

Specifically, the third call of the property description runs to the "said right-of-way on the East of the boundary line of other land of [Winifred W. Curtis]" and the final call is "thence Northerly along the Easterly line of said right-of-way fifty feet (50')to the point or place of beginning." Although no right of way along the northwesterly boundary of Gardner's property had been legally created for the reasons stated earlier, Gardner did not know that, and he therefore referenced that right of way in making the 1949 conveyance to Curtis.

Also granted in that deed is "all of the right, title and interest of [Gardner] in and to the aforesaid rights-of-way adjoining the premises above described" (emphasis added).

Curtis argues that the grant of right, title and interest in the "aforesaid" rights of way was intended to convey to him the right of way shaded in yellow on the attached map. Even assuming that the right of way had been legally created in the 1927 deed to Gardner, however, the court would disagree. The right of way shaded in yellow does

Gardner was subject to that easement. No evidence was offered, however, that any such right of way had ever previously been granted or conveyed to Dr. Burnet.

[2] Because the 1950 Gardner plan is not referenced in any of the relevant deeds, the court does not find that its depictions of rights of way have the legal effect of creating such easements. The map is, however, extremely useful in illustrating the location of the relevant parcels and the references in Gardner's 1949 deed to Winifred W. Curtis.

not adjoin the property conveyed to Winifred Curtis in 1949 ("the premises above described"). Only the portion of that right of way which runs along the westerly boundary of that parcel (the portion shaded in green on the attached map) adjoins that property. To the extent that a right of way existed that Gardner could convey, therefore, he did not convey the portion claimed by Curtis in this action.[3]

### 2. Counterclaim for Trespass

Hahn's counterclaim for trespass is based on the presence of two encroachments. Neither involve the right of way that is the subject of Curtis's claim.

One of encroachment involves a shed that was placed on the southern boundary of the smaller Winifred Curtis parcel by Curtis's parents in 1995 or 1996. Curtis subsequently learned that the back of the shed had been placed over the boundary of the Hahn land but was originally told by William Hahn's sister (at that time a co-owner of the Hahn property) not to worry about it. After Hahn and his siblings divided up the property, however, Hahn became the owner of the land adjoining Curtis's property, and Hahn asked Curtis to remove the encroachment. There is a dispute as to how long it took Curtis to comply,[4] but the shed and all its contents were subsequently removed.

It is not disputed that this constituted a common law trespass that has now been terminated. The Hahn Trust argues that it also constituted a statutory trespass under 14 M.R.S. § 7551-B. However, it did not plead a statutory trespass in its counterclaim.

---

[3] Almost immediately after Gardner conveyed the parcel outlined in blue to Winifred Curtis, he conveyed the remainder of the land west of the town road that he had obtained in the 1927 deed to Katherine B. Hahn (this conveyance is also shown on the 1950 Plan) and Dr. Burnet's land and Katherine Hahn's land came into common ownership. At that point, to the extent that the right of way shaded in yellow on the attached map ever existed, it would have been extinguished by merger.

[4] Hahn has the burden of proof on this issue and the court finds that he has not proven that Curtis's recollection on this issue was incorrect.

4

Moreover, even if the counterclaim could be construed as asserting a statutory trespass claim and even if Curtis's failure to remove an unintentional encroachment became intentional when Curtis did not immediately remove the shed upon William Hahn's request, the Hahn trust did not prove the elements of a statutory trespass under § 7551-B. Curtis neither damaged or defaced any structure under § 7551-B(1)(A) nor did Curtis dispose of any "litter" on the Hahn Trust property under § 7551-B(1)(B).

The Hahn Trust argues that Curtis may have contaminated the property and it seeks damages of $ 175 (the amount necessary for a soil test to determine if any such contamination existed) on that basis. Based on the evidence at trial, however, the court finds that the Hahn Trust did not prove that there was any potential contamination from the items stored in the shed even if those items were stored on the Trust's side of the boundary.

Since no other damages were proven, the court awards the Hahn Trust nominal damages of $1.00 for the encroachment of the shed.

The other trespass claimed by the Hahn trust involved a snowplow that was left on its property next to Hahn's new driveway. There was no evidence, however, that the snowplow belonged to Curtis or that Curtis had anything to do with its abandonment on the Hahn Trust's property.

The entry shall be:

Judgment is entered for defendant on plaintiff's claim that he has a deeded easement along the northwesterly boundary of the lot conveyed to James Gardner in 1927. Judgment is entered for defendant on its counterclaim for common law trespass and nominal damages of $1.00 are awarded to defendant on that claim.

If any party seeks to have the court enter a more detailed judgment for recording purposes, that party shall submit the proposed judgment and serve a copy on opposing counsel within 10 days. Opposing counsel shall have 7 days in which respond.

5

The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: July __19__, 2011

_____
Thomas D. Warren
Justice, Superior Court

STATE OF MAINE
Cumberland, ss, Clerk's Office

JUL 19 2011

**RECEIVED**

